UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x

LORENA MERCEDES ET AL.,

      Plaintiff,

 -against-                                  22 Civ. 2777 (CM)(JLC)

MANHATTAN FOOD & BEV. LTD.,
D/B/A REICHENBACH HALL, ET AL.,

      Defendants.

———————————————————————x

**MEMORANDUM ORDER GRANTING IN PART DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAYING CASE PENDING ARBITRATION**

McMahon, J.:

      Defendants originally moved for an order dismissing this case and compelling arbitration. (Dkt # 10). That motion has now been amended so that it is a motion to compel and to stay the case pending arbitration – the paradigm favored in the Second Circuit. *Katz v. Cellco Partnershp*, 794 F. 3d 341, 343 (2d Cir. 2015).

      The court in a case like this one is limited to ascertaining whether the parties agreed to arbitrate – which is to say, a judge is limited to assessing issues of contract formation. The party moving to compel arbitration must make a *prima facie* showing that an agreement to arbitrate existed; that burden is satisfied by the well-established proposition that an arbitration agreement purportedly signed by an employee is *prima facie* evidence of a promise to arbitrate. The moving party need not demonstrate that the agreement would be enforceable; in a case like this one, in which the arbitration agreement is very broad and calls for application of rules of arbitration that reserve issues of jurisdiction and enforceability to the arbitrator – where the designated rules are those of the American Arbitration Association, as is the case here – issues relating to the enforceability of the agreement (and there certainly are some such issues) are for the arbitrator. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 66 (2010).

      In this case, at a hearing called for the purpose, all five plaintiffs admitted under oath that they had in fact signed the arbitration agreement at issue. So this is not like previous cases in which this court has been confronted with possible forgeries of employee signatures on documents that they were never shown. Consideration was offered in the form of a job. The only question for this court is whether the plaintiffs had or lacked the capacity to contract.

The plaintiffs are five intelligent and well educated women. All but one speak fluent English and have at least some college; two are college graduates. Two of the plaintiffs attended university in the Philippines, but took some or all of their classes in English. It is clear that the plaintiffs (other than plaintiff Paola Teran Iniguez, whose situation I will address separately) had the capacity to assent to the terms of the contract. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006).

Although all of the plaintiffs stated that they were given only a brief period of time to sign the legal documents that were placed before them, there is no evidence in the record that any representative of the defendant actually said to any plaintiff, "You have to sign these in five or ten minutes." Nor is there any evidence that any plaintiff was prevented from reading the documents. None of the plaintiffs asked for additional time to review the documents, so while counsel argues that his clients were "not given" sufficient time to review the documents, there is no way to infer that additional time would not have been given. The stack of documents was not large (11 pages), and some of those pages were Form W-4 and Form I-9 – documents that need to be filled out with things like an employee's name, address and social security number, but that do not require any "heavy lift" reading. The important contractual documents – the notice of at-will employment and the arbitration agreement – consist of a total of two single spaced pages, with key phrases in boldface and larger type. While none of the plaintiffs has any legal training, legal training is not required for a college student or graduate to understand that the arbitration agreement relates to how employment disputes will be resolved. It is rare for new hires to anticipate that some day in the future that particular provision will actually matter to them; in the court's experience it seldom matters at the outset of a job, before the employee has been cheated out of wages or otherwise mistreated by his or her employer.

Under New York law, a party who signs a document without any valid excuse for having failed to read it is conclusively bound by its terms, *Gillman v. Chase Manhattan Bank*, 73 N.Y. 1, 11 (1988). None of the English-speaking plaintiffs testified to any valid excuse for failing to read the documents before signing them. The plaintiffs were told that the documents were necessary in order for them to be paid. That undoubtedly placed some pressure on them to sign without questioning; I am sure they wanted to be paid.[1] But it does not excuse their failure to read the documents and raise questions or demand additional time before signing if they needed to better understand what they were getting into. Plaintiffs did ask for copies of the documents they had signed and were not given them, which strongly suggests that they were signing on with an unscrupulous employer (indeed, that is their allegation). But there is no evidence that the plaintiffs asked for copies of the documents to review before signing them. While the managers of defendants' facility undoubtedly made light of the seriousness of the documents (describing them to one plaintiff as "formalities," to another as "policies and procedures and tax documents" – which, as it happens, they were), there is no evidence, let alone clear and convincing evidence, that any of the plaintiffs was fraudulently induced to sign any of the documents.

---

[1] Counsel makes much of the fact that most of the plaintiffs spent a day or two or more as "trainees" before being asked to sign the documents. It is not clear from the record whether they ended up being paid for work performed during this "training" period, which sounded to the court more like a period when defendants were getting some free or reduced rate work from unsophisticated individuals. However, if plaintiffs had not signed the arbitration agreement and had been let go, they would have had a claim for unpaid wages as to which their "trainee" status would afford no defense – and that claim would not have been arbitrable.

As I stated on the record at the hearing, this court deplores these arbitration clauses in employment agreements and believes that, in cases securing federally protected rights (such as the rights secured under the Fair Labor Standards Act), they should be outlawed. But I am not Congress, so I cannot impose such a requirement. There is no question that plaintiffs would not have secured employment, or would have immediately lost employment already secured, if they did not sign the arbitration agreement. That is a sad artifact of our worker-unfriendly society.

I thus conclude that plaintiffs Mercedes, Dubouzet, Tran and Coyle must arbitrate their claims. This action as against them is stayed pending arbitration; the court retains the ability to enforce any arbitration award (or settlement).

As for plaintiff Teran Iniguez: her ability to understand English at the time she signed these documents is very much open to question. She had been in the United States for only a few days when she was hired by defendants and she was able to communicate with her employer over WhatsApp in English only by using Google Translate to compose messages. (DX-1). The explanation she gave about how the documents were described to her by "Alexis," a manager who did not testify, does not convince the court that she was made aware of what she was signing in any meaningful way.

I am giving the parties until March 31 to brief the issue of whether plaintiff Teran's language deficiencies and the circumstances surrounding her signing of the documents impact her ability to enter into a contract. In this regard, the parties should know that I credit Ms. Teran's testimony in its entirety.

Dated: March 23, 2023

U.S.D.J.

BY ECF TO ALL COUNSEL